IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HUTCHINSON CONSULTANTS
PC and DR. LESLIE
HUTCHINSON,

        Plaintiffs,

     v.

TISHA MARIE TITUS, M.D. and
RICHARD J. MILLER, M.D., in
their individual capacities, and
JOHN OR JANE DOE, an employee
of FEDERAL OCCUPATIONAL
HEATH, a non-appropriated agency
within the UNITED STATES
DEPARTMENT OF HEATH AND
HUMAN SERVICES, in his or her
individual capacity,

        Defendants.

        1:13-cv-3560-WSD

## OPINION AND ORDER

This matter is before the Court on Defendants Tisha Marie Titus's ("Titus"),

M.D., and Richard J. Miller's ("Miller"), M.D., Motion to Dismiss Plaintiffs

Hutchinson Consultants' ("HC") and Leslie Hutchinson's ("Hutchinson"), M.D.,

Second Amended Complaint for failure to state a claim upon which relief can be

granted [33].

## I.     BACKGROUND

### A.     <u>Facts</u>

Federal Occupational Health ("FOH") is a non-appropriated agency within the United States Department of Health and Human Services ("HHS") that provides occupational health services to federal employees.  FOH entered into a contract with InGenesis, Inc. ("InGenesis") that required InGenesis to provide annual medical qualifications and return to work clearances ("Clearance Services") to employees of federal law enforcement agencies.  InGenesis, in turn, entered into a contract with STG International ("STG") that required STG to provide the Clearance Services.  STG, in turn, entered into a contract with HC that required HC to provide Clearance Services for employees of federal law enforcement agencies ("the HC Agreement").  Defendants Titus and Miller, and an unidentified "John or Jane Doe" Defendant, are employed by FOH (sometimes collectively referred to as "Defendants").  Defendants Titus and Miller are first-level supervisors at FOH. The Second Amended Complaint does not describe Defendant Doe's role at FOH.

HC is a private corporation, based in Auburn, Georgia.  The HC Agreement required HC to assist in providing Clearance Services for Court Security Officers ("CSO") and Special Security Officers ("SSO") employed by the United States

Marshals Service ("USMS").  It also required HC to recommend to the Judicial

Services Division of the USMS whether to approve or withhold medical clearances

for CSOs and SSOs.  Hutchinson is a board certified specialist in Occupational

Medicine and Preventive Medicine, and a primary owner of HC.  Hutchinson

alleges that he has a non-verbal learning disability associated with Asperger's

syndrome or high-functioning autism.

In September 2010, Hutchinson began to provide Clearance Services for

CSOs and SSOs pursuant to the HC Agreement.  Hutchinson received medical

examination reports of CSOs and SSOs that contained health information ("PHI")

protected from disclosure by the Health Insurance Portability and Accountability

Act of 1996 ("HIPPA").  Sarah Ohlsson, the Administrative Coordinator for the

USMS's Judicial Services Division, provided Hutchinson with medical

examination reports and entered medical information on an online system known

as MERITS.  Plaintiff performed a substantial amount of the work at his home

because he claims that due to his disability he is most productive at night.  Ohlsson

allegedly sent the medical examination reports to Plaintiff's home office through

encrypted emails and unencrypted facsimiles.  Plaintiff alleges that "FOH

supervisors were aware of and had authorized Ohlsson's practices of sending and

receiving medical information via fax" to his home.  Second Am. Compl. at ¶ 62.

On May 16, 2013, Hutchinson received a group email from Defendant Miller.  In it, Defendant Miller requested each FOH reviewing physician to bring all federal medical records to Defendant Titus's office on May 17, 2013, the day after the email was sent.

On May 17, 2013, Hutchinson met with Defendants Titus and Miller in Defendant Miller's office, and produced the medical records in his possession.  An Atlanta police officer and a building security guard were present outside Defendant Miller's office when Hutchinson arrived for the meeting.  Once inside Defendant Miller's office, Hutchinson participated in a conference call.  Defendants Miller and Titus, along with Marcia Euwema ("Euwema"), STG's Human Resources Director, participated in the call.  Euwema told Hutchinson that STG was terminating the contract with HC because of a "security breach."  Id. at ¶ 72.

Hutchinson alleges that he was not aware of a "security breach," and asked Euwema to explain the circumstances of the breach.  Id. at ¶ 73.  "Euwema, [] Miller and [] Titus [] stated that they were not allowed to tell [] Hutchinson about the problem."  Id.  Hutchinson "inquired if the problem related to the faxing of material to and from Ohlsson.  Hutchinson alleges that an unidentified male voice came over the speaker phone and said that 'there had actually been a confidential leak.'"  Id. at ¶ 74.  Euwema told Hutchinson that a HIPPA breach had occurred.

4

Id. at ¶ 74.  Hutchinson contends that "all of the other participants in the conference call" refused to provide specific details regarding the alleged breach. Id. at ¶ 76.

Plaintiffs allege that Defendants Miller and Titus and the John Doe Defendant communicated to unidentified third parties that (1) the contract with STG was terminated because of a "data breach" and a "confidential leak," (2) Plaintiffs caused the "data breach" and "confidential leak," and (3) as a consequence of the communications, Hutchinson lost "other contracts and consulting opportunities that he is qualified to perform." Id. at ¶ 81-85.

B.     Procedural History

On October 28, 2013, Plaintiffs filed a ten count (10) Complaint against FOH and a Doe Defendant, in his or her official and individual capacities.  In the original Complaint, Plaintiffs alleged that Defendants (1) violated the substantive and procedural components of the Due Process Clause by terminating Plaintiffs' contract with STG, (2) violated the Equal Protection Clause by treating Hutchinson differently from similarly-situated contractors because of his disability, and (3) tortiously interfered with Plaintiffs' business relations by inducing third parties not to enter into or continue a business relationship with HC.

On January 6, 2014, FOH moved to dismiss the original Complaint on the

grounds that the Court lacked subject-matter jurisdiction because Plaintiffs filed this action against FOH without providing notice of their claim to HHS, as required by the Federal Tort Claims Act.  FOH further claimed that the United States Court of Federal Claims has jurisdiction over FOH with respect to Plaintiffs' claims based on HC's contract with STG.

On February 26, 2014, the Court granted Plaintiffs' Motion to file an Amended Complaint.  That day, Plaintiffs filed their Amended Complaint to include claims against a Doe Defendant based on the deprivation of a property and liberty interest, under the Due Process Clause, and the denial of equal protection, under the Equal Protection Clause.  In the Amended Complaint, Plaintiffs did not name FOH as a defendant in the action.

On March 14, 2014, Plaintiffs moved to file a Second Amended Complaint, which, on March 18, 2014, the Court granted.  In the Second Amended Complaint, Plaintiffs assert claims against Defendants Titus, Miller, and a Doe Defendant, in their individual capacities, pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).[1]  Count I of the Second

---

[1] "Claims brought under *Bivens* are similar to § 1983 claims, because *Bivens* essentially created a remedy against federal officers, acting under color of federal law . . . Courts generally apply § 1983 law in *Bivens* actions."
Topping v. U.S. Dept. of Educ., 510 F. App'x 816, 818 (11th Cir. 2013).

Amended Complaint alleges that Defendants violated Plaintiffs' substantive Due Process rights in violation of the Due Process Clause by "interfering with Plaintiffs' interests in working on current and future contracts and other [federal] projects."  Second Am. Compl. at ¶ 89.  Plaintiffs contend that "Defendants' unlawful action of accusing [] Hutchinson of a HIPPA violation and a data security breach, which resulted in terminating [] HC's contract, was done with the premeditated intent of preventing Plaintiffs from working [as consultants to FOH] and was done maliciously and in bad faith.  Such bad faith actions violate Plaintiffs substantive due process rights."  Id. at ¶ 91.

    In Count II of the Second Amended Complaint, Plaintiffs allege that Defendants violated Plaintiffs' equal protection rights under the Equal Protection Clause by "treat[ing] [Plaintiffs] differently from other similarly-situated contractors in that Defendants are maliciously prosecuting them due to [Hutchinson's] disabilities."  Id. at ¶ 95.

    In Count III of the Second Amended Complaint, Plaintiffs allege that Defendants violated Plaintiffs' procedural Due Process right to bid and work on contracts for FOH and other federal agencies by "wrongfully accusing [] Hutchinson of a HIPPA violation and a data security breach, which resulted in

FOH's termination of [] HC's contract . . . ."  <u>Id.</u> at ¶¶ 100-101.[2]

On July 13, 2014, Defendants Titus and Miller moved, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint on two grounds.  First, that the Plaintiffs fail to state a claim against Defendant Titus and Miller upon which relief can be granted.  Second, that Defendants Titus and Miller are otherwise entitled to qualified immunity.  Alternatively, and for the same reasons, Defendants Titus and Miller move for summary judgment on Plaintiffs' claims.

On August 1, 2014, Plaintiffs replied to the Defendants' Motion to Dismiss the Second Amended Complaint, and moved to stay the time to respond to Defendants' Motion for Summary Judgment.  On August 6, 2014, the Court agreed first to consider the Motion to Dismiss and stayed the time for Plaintiffs to respond to Defendants' Motion for Summary Judgment.  The Court ordered that if the pending Motion to Dismiss is denied, Plaintiffs are required to respond to the Motion for Summary Judgment eighteen (18) days after the Court denies the Motion to Dismiss.

---

[2] It is not clear from the allegations in Count III if Plaintiffs intend to limit this claim to the Doe Defendant.  Because paragraph 98 of the Second Amended Complaint incorporates paragraphs 1-86 of the Second Amended Complaint, the Court, for the purposes of this Motion, considers the procedural Due Process Claim to be raised against all of the Defendants.

## II.     DISCUSSION

### A.     Legal Standard

#### 1.     Motion to Dismiss

Dismissal of a complaint, pursuant to Rule 12(b)(6), is appropriate "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).  In considering a motion to dismiss, the Court accepts the plaintiff's allegations as true and considers the allegations in the complaint in the light most favorable to the plaintiff.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295 (11th Cir. 2007); see also Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).  The Court is not required to accept a plaintiff's legal conclusions as true.  See Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)), abrogated on other grounds by Mohamad v. Palestinian Auth., — U.S. —, 132 S. Ct. 1702 (2012).  The Court also will not "accept as true a legal conclusion couched as a factual allegation."  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint, ultimately, is required to contain "enough facts to state a claim to relief that is plausible on its face."  Twombly,

550 U.S. at 570.

To state a plausible claim for relief, the plaintiff must plead factual content that "allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully," and a complaint that alleges facts that are "merely consistent with" liability "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id. (citing Twombly, 550 U.S. at 557); see also Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 680 (11th Cir. 2014) (noting that Conley's "no set of facts" standard has been overruled by Twombly, and a complaint must contain "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."). "A complaint is insufficient if it 'tenders naked assertions devoid of further factual enhancement.'" Tropic Ocean Airways, Inc. v. Floyd, — F. App'x —, No. 14-12424, 2014 WL 7373625, at *1 (11th Cir. Dec. 30, 2014) (quoting Iqbal, 556 U.S. at 678).

"To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004); see also White v. Bank of America, NA,

— F. App'x —, No. 14-10318, 2014 WL 7356447, at *2 (11th Cir. Dec. 29, 2014)

("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions

masquerading as facts will not prevent dismissal.") (quoting Oxford Asset Mgmt.,

Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002)).[3]

    B.    Analysis

        1.    *Substantive Due Process*

           i.    Property Interest

Under the Due Process Clause of the Fifth Amendment, the federal

Government cannot deprive any person of "life, liberty or property without due

process of law."  U.S. CONST. amend. V.  A property interest must be based on "a

legitimate claim of entitlement."  Board of Regents v. Roth, 408 U.S. 564, 570-571

(1972).  Property interests are "created and their dimensions are defined by

existing rules or understandings that stem from an independent source such as

state-law-rules or understandings that secure certain benefits and that support

claims of entitlement to those benefits."  Id. at 577.  "To have a property interest in

---

[3] Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to state "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In Twombly, the Supreme Court recognized the liberal minimal standards imposed by Federal Rule 8(a)(2) but also acknowledged that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Twombly, 550 U.S. at 555.

a benefit, a person clearly must have more than an abstract need or desire for it.
[He] must have more than a unilateral expectation of it.  [He] must, instead, have a
legitimate claim of entitlement to it." Id.  Property interests are based on existing
rules or understandings under state law.  See Perry v. Sindermann, 408 U.S. 593,
601 (1972).  Property interests are not created by the Constitution.  See Roth, 408
U.S. at 577.

     An individual who serves as a public employee may have a protected
interest in his or her job if he or she cannot be removed "except for cause." See
Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982); Barry v. Barchi,
443 U.S. 55, 65 (1979); see also Stein v. Bd. of Educ., 792 F.2d 13, 14 (2d Cir.
1986) (finding that plaintiff had a legitimate claim to a property interest because
"Stein could not be discharged from his employment except for just cause.").  The
Eleventh Circuit also recognizes that an "only 'for cause'" provision can create a
property right.  See Barnes v. Zaccari, 669 F.3d 1295, 1304-05 (11th Cir. 2012).
In Barnes, the Eleventh Circuit held that a student expelled by Valdosta State
University ("VSU") had a property interest in his continued enrollment at VSU
because VSU's Policy Manual and Student Code allowed disciplinary sanctions to
be imposed on a student "only 'for cause.'" Id.  The Eleventh Circuit explained
that "until a student violates [the "only 'for cause'" provision], that student has a

legitimate claim of entitlement to continued enrollment at VSU under Georgia law." Id. at 1305.  The mere presence of a "just cause" provision in a contractual agreement, however, does not create a property interest.

In Ross v. Clayton County, Georgia, the Eleventh Circuit considered whether a probationary employee had an entitlement to continued employment with Clayton County.  173 F.3d 1305, 1308 (11th Cir. 1999).  The Eleventh Circuit noted that Rule 8.301 of the Clayton County Service Rules ("CCSR") provided that an employee may be demoted only "for cause."  Id. at n.5.  The CCSR defined "cause" to include "unfitness to perform assigned duties, negligence or inefficiency in performing duties, misconduct, insubordination or for other justifiable cause." Id.  The Eleventh Circuit noted that Rule 8.303 of the CCSR provided that probationary employees did not have a right to appeal their demotion.  Id. at 1308. Reading the Rule 8.301 and 8.303 demotion provisions together, the Eleventh Circuit held that "the determination of whether [there was] [] grounds [] [to demote] were exclusively for the [employer], whose authority was unchecked because there was no appeal right for probationary employees . . . [and the] regulations created something tantamount to an ability to demote at will, rather than a just cause standard."  Id. at 1309.  Because the authority to determine whether there were grounds to demote were vested in the employer, the Eleventh

Circuit concluded that the plaintiff lacked a property interest in his continued employment.  Id. at 1309-10.

Other federal courts similarly have concluded that the mere presence of a "just cause" provision alone does not create a property interest, especially where there are other terms of employment to provide grounds or authority to terminate. See Dasey v. Anderson, 304 F.3d 148, 157-160 (1st Cir. 2002) (holding that "just cause" provision in a probationary employee's contract did not provide employee with a property interest in continued employment because the statutory and regulatory scheme only protected veteran troopers and evidence indicated that the phrase was not meant to establish a "just cause only" standard); Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America, Local 737 v. Auto Glass Employees Fed. Credit Union, 72 F.3d 1243, 1251 (6th Cir. 1996) (holding that plaintiffs did not have a property interest in their collective bargaining agreement despite the right to be discharged for "just cause" because "no provision explicitly promised that the Credit Union would not discharge its employees without cause" and the employer had discretion to terminate for other reasons).

Federal courts analyze substantive Due Process claims under contracts for public services under the same framework that applies in cases involving contracts

14

for personal employment with the government.  See Toxco, Inc. v. Chu, 801 F. Supp. 2d 1, 9 (D. D.C. 2011) (applying the framework developed in public employment cases to a sub-contractor's Due Process claim).  The same analysis applies also when the alleged property interest is based on a subcontract instead of a direct contract with the federal government because "the question of whether an individual has a property interest in a government benefit depends upon whether the person is entitled to that benefit."  See Baja Contractors, Inc. v. City of Chicago, 830 F.2d 667, 676 (7th Cir. 1987).  For example, in Toxco, Inc., the District Court found that the subcontractor did not have a property interest protected by the Constitution because the Government did not promise to retain the subcontractor and there were no limitations on the Government's authority to withdraw its consent to the subcontract.  See Toxco, Inc., 801 F. Supp. 2d at 9.

To establish a legitimate claim of entitlement, Plaintiffs must show that they had, under State law, the right to provide services to FOH, and the right to work on contracts with other federal agencies.  See Ross, 173 F.3d at 1307; LaFleur v. Hugine, 587 F. App'x 536, 541 (11th Cir. 2014); Amador v. Town of Palm Beach, 517 F. App'x 834, 837 (11th Cir. 2013) ("In order to have a constitutionally protected property interest in one's public employment, the employee must have a legitimate and objective entitlement to continued employment based on

ordinances, rules, regulations, or other mutual understandings promulgated by the government.").

Against this legal backdrop and Plaintiffs having admitted that they do not have a property interest in providing Clearance Services to FOH, Plaintiffs suggest that Wilson v. MVM, Inc., 475 F.3d 166 (3d Cir. 2007) supports that they have a protected property interest in the contract with STG because the contract contains a "for cause" provision that allows STG to terminate the contract only "as may be necessary." Plaintiffs appear to contend that this "for cause" provision in a subcontract three times removed from the FOH is enough to support that a property interest exists and was violated when FOH provided STG with a reason—the alleged HIPPA violation—to terminate the contract. Wilson stands for the unremarkable proposition that where a contract for employment services contains a "just cause" termination provision, an employee has an expectation of continued employment, and where the Government provides the grounds to require a "just cause termination," an employee's property right may be adversely effected.

The Third Circuit, in Wilson, considered the termination of employment of employees who worked for MVM, Inc. ("MVM"), a company that contracted with the USMS to provide CSOs to assist the USMS to provide security services. 475 F.3d at 170. MVM had a clause in its collective bargaining agreement that

stated that the CSOs could be terminated for "just cause only."  Id.  During the

course of the CSOs' employment, the USMS added several medical conditions that

precluded individuals from qualifying to be CSOs at facilities at which the USMS

provided protective services.  Id. at 171.  Several MVM employees who suffered

from these medical conditions were thus disqualified from serving as CSOs, and

because MVM did not have other positions for them, they terminated the

employment of these employees claiming the USMS medical requirements

constituted "just cause" for their termination.  Id.

The employees sued MVM, the USMS, the Judicial Conference of the

United States and the Department of Justice ("the federal defendants").  Id. at 170.

Among the claims alleged was that their Due Process rights were violated.

Id. at 175.  They alleged specifically that the determination by the USMS that

made them medically disqualified for a job they held for many years was the basis

for their termination and that, as a result, their Due Process rights were violated by

the federal defendants.  Id.  The Third Circuit held that the "just cause only"

termination provision in the collective bargaining agreement created a property

interest in the CSOs' employment with MVM.  Id. at 177.

The Third Circuit, in Wilson, held that a CSO could assert a claim against

the federal defendants where the USMS's decision on medical qualifications

17

directly impacted an employer's decision to terminate.[4]  Id. at 178.  The Third

Circuit held that the plaintiffs thus had a property interest in their contract that

entitled them to the guarantees of procedural fairness under the Due Process

Clause because "'[t]he just cause for the discharge was supplied by the state, which

by disqualifying the employee[s] foreclosed them from doing [their jobs].'"  Id.

(quoting Stein v. Bd. of Educ., 792 F.2d 13, 16 (2d Cir. 1986)).  Wilson does not

apply here.

 The "Termination" provision here is different from the one in Wilson.  The

HC Agreement contained a three subpart "Termination" provision:

> 5.1 This Agreement may be terminated as may be necessary by *any of the following means* (emphasis added):
>
>> 5.1.1 By direction of Client(s) or its designated agent. Termination will be effective immediately or upon the date set by Client(s).
>>
>> 5.1.2 By STGi, for cause, upon such prior notice and after such opportunity to cure, if any, as STGi shall deem advisable under the circumstances.  STGi also may terminate this Agreement or the Services, upon written notice in the event of a material breach by Contractor of this Agreement.
>>
>> 5.1.3 By Contractor, for cause, after giving due notice, STGi

---

[4] The Third Circuit found that the employees had been afforded sufficient notice and opportunity to be heard on their disqualification and affirmed the district court's dismissal of the Due Process claim against the federal defendants. Id. at 178.

> fails to correct conditions that impede the Contractor's
> performance such that its professional reputation is at risk.

Contract for Services Between STG and HC, at p. 3, attached as Ex. 1 to

Defs.' Mot. to Dismiss.

Three different bases for contract termination discredits Plaintiffs' argument

that they had a legitimate claim of entitlement to perform under the contract with

STG.[5]  The "Termination" provision allows the Client (in this case FOH or

InGenesis), in its discretion, to terminate the HC Agreement immediately or on a

date certain.  "Cause" is not required and in its absence in this subparagraph alone

supports that Plaintiffs did not have a legitimate expectation of continuation of

services.  Even under the second subparagraph where the termination is for cause,

Plaintiffs were allowed an opportunity to cure only if STG determined the

opportunity advisable.  Again, discretion given to STG does not support a

legitimate entitlement to continuation of the HC Agreement.  STG had the right to

terminate the contract without cause at the direction of either InGenesis or FOH or

for a material breach of the agreement.

---

[5] The HC Agreement had a more developed "Termination" provision than the one
in Wilson because it allowed STG to terminate the agreement under three different
circumstances: (1) by direction of a client or its designated agent, (2) by written
notice in the event of a material breach by HC, and (3) for cause, upon such prior
notice and after such opportunity to cure, if any, as STG deemed advisable under
the circumstances.

The allegations here do not support that Plaintiffs had a "legitimate claim of entitlement" to the continuation of their agreement with STG.  The cases support this conclusion.  In Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America, Local 737 v. Auto Glass Employees Fed. Credit Union, the conservator of a Federal Credit Union ("FCU") repudiated a collective bargaining agreement, implemented new wage rates and employee benefits, and terminated the existing employee pension plan and distributed vested pension benefits to at least some of the plan beneficiaries.  72 F.3d 1243, 1246 (6th Cir. 1996).  Employees of the FCU and their union filed a complaint against the FCU, in which they alleged that the conservator's actions caused termination, constructive discharge or permanent layoff in violation of their constitutional right not to be deprived of a property interest without Due Process of law.  Id.  The Sixth Circuit held that although the employees' collective bargaining agreement created a "non-exhaustive list of management rights" that included "the right to discharge employees for 'just cause,' no provision explicitly promised that the [FCU] would not discharge its employees without cause."  Id. at 1251.

The Sixth Circuit, therefore, held that the employees failed to state a claim under the Due Process Clause because they did not have a property interest in their continued employment based on the collective bargaining agreement.  Id.  The

Sixth Circuit's requirement that an agreement must explicitly promise that it will not be terminated unless there is just cause is consistent with other federal decisions.  See Strolberg v. U.S. Marshals Service, 350 F. App'x 113, 114 (9th Cir. 2009) (holding that a contract containing a just cause provision that allows the government to terminate the agreement creates a "hybrid contract" with no constitutionally protected property interest); Letich v. MVM, Inc., No. Civ.A. 03-4344, 2005 WL 331707, at *3 (E.D. Pa. Feb. 10, 2005) (finding that plaintiffs had no property interest despite a "just cause" provision in their agreement because the agreement did not contain unqualified language that termination would be for "just cause only."); see also Int'l Union, Sec., Police, and Fire Prof'l of Am. (SPFPA) v. United States Marshal's Serv., 350 F. Supp. 2d 522 (S.D.N.Y. 2004).

The HC Agreement allows FOH to terminate the HC Agreement in its discretion.  The "just cause" provision in the HC Agreement allows STG to terminate the agreement "upon such prior notice and after such opportunity to cure, if any, *as STG[] deemed advisable under the circumstances.*" (emphasis added). The HC Agreement does not contain a mechanism for how an opportunity to cure will be given or what factors STG may utilize in determining whether Plaintiffs are entitled to an opportunity to cure before the agreement may be terminated.  The agreement simply provides STG with the discretion to determine the process that

21

applies if it decides to terminate the agreement for "just cause."  This discretion

coupled with the absence of a provision in the HC Agreement that describes the

process allegedly due to Plaintiffs means that the "just cause" provision also does

not create a property right to the continuation of the contract.  See Ross, 173 F.3d

at 1309-10 (holding that plaintiff had no property interest despite "just cause"

provision in the agreement because employer determined whether just cause

existed to terminate, and employer's authority was unchecked because there was

"no appeal right for probationary employees."); Edwards v. Brown, 699 F.2d 1073,

1077 (11th Cir. 1983) (ordinance providing that police officer "shall serve during

good behavior and efficient service, to be judged by the Commissioner or a

designee" did not create a property interest because the Commissioner determined

whether officer served during "good behavior and efficient service.").

The HC Agreement does not constitute the kind of single "for cause" only

termination provision that can support a legitimate claim of entitlement to

continuation of the Agreement.  The Court concludes that Plaintiffs do not have a

"legitimate claim of entitlement" to do business with FOH or to the continuation of

their private contract with STG, and thus do not have a property interest upon

22

which a Due Process claim may be based.[6]  Defendants Titus's and Miller's

Motion to Dismiss Plaintiffs' substantive Due Process claim based on a property

interest is granted.

ii.    Liberty Interest

Under the Due Process Clause of the Fifth Amendment, a liberty interest

includes an individual's right "in his or her reputation coupled with the more

tangible benefits or entitlements which rest upon a person's good name."

Bank of Jackson County, 980 F.2d at 1367.  To prevail on a claim that government

---

[6] Defendants Titus and Miller rely on a letter from STG to the American
Arbitration Association and Plaintiffs' counsel to support that their Motion to
Dismiss should be granted.  The letter states that STG terminated the contract at
the direction of InGenesis.  Defendants argue that the "for cause" provision does
not apply here because Plaintiffs' contract was terminated at InGenesis's direction.
These facts were not included in the Second Amended Complaint.  The Second
Amended Complaint alleges that Euwema, at the direction of STG, told
Hutchinson that STG was terminating the contract with HC because of a "security
breach."  Id. at ¶ 72.  Accepting these facts as true at this stage of the proceedings,
the Court finds that Section 5.1.2 of the HC Agreement allows STG to terminate
the contract for cause or for a material breach of the provisions of the Agreement.
Even if the Court limited its discussion to this provision of the contract, the result
would be the same because this provision does not limit STG's discretion to
terminate the contract "for cause only."  STG may also terminate the contract for a
material breach of the agreement.  Whether STG did or could terminate the
agreement for a material breach is not before the Court, and it is not germane to the
Court's analysis of whether Plaintiffs have a property interest at stake that triggers
the substantive and procedural components of the Due Process Clause.  The
Court's analysis is confirmed by section 5.1.3 of the agreement, which allows HC
to terminate the Agreement only for cause after giving due notice to STG.

23

action deprived the plaintiff of a liberty interest in reputation, the plaintiff must show: (1) a stigmatizing allegation []; (2) dissemination or publication of that allegation [], and (3) loss of some tangible interest due to publication of the stigmatizing allegation []." Id.  The plaintiff must show that the government published a charge that damaged plaintiff's "standing and associations in the community." Roth, 408 U.S. at 573-575.  The "stigma" caused by the Government's action must prevent the plaintiff from access to a "range of employment opportunities." Id.; Paul, 424 U.S. at 701.  To prevail on a claim that the Government's alleged defamatory statements deprived Plaintiffs of their liberty interest, Plaintiffs must show "an additional constitutional injury, tied to a previously recognized constitutional property or liberty interest, flowing from the defamation." See Rehberg v. Paulk, 611 F.3d 828, 852 (11th Cir. 2010) (noting that generalized allegations of defamation are insufficient to state a liberty interest claim under the Due Process Clause).

Plaintiffs claim that Defendants communicated to third parties that (1) the contract with STG was terminated because of a "data breach" and a "confidential leak," (2) Plaintiffs caused the "data breach" and "confidential leak," and (3) as a consequence of the communications, Hutchinson lost "other contracts and consulting opportunities that he is qualified to perform." Second Am. Compl.

at ¶ 81-85.  These conclusory allegations are insufficient to state a claim for the deprivation of a liberty interest under the Due Process Clause.

The Second Amended Complaint here alleges facts that third parties were told that the contract with STG was terminated because of a "data breach" and a "confidential leak" and, as a result, unspecified contracts and consulting agreements were lost.  While this alone is not enough to state a claim, the Second Amended Complaint fails completely to allege the "additional constitutional injury" required to allege adequately a liberty interest supporting a Due Process violation.  See Rehberg, 611 F.3d at 852.  Plaintiffs do not allege that HC or Hutchinson had an existing property interest in the contracts and consulting opportunities that were lost because of the Defendants' actions.  Id.  Plaintiffs only allege that they "lost" unspecified contracts and "opportunities" to seek contracts.

The allegations also are insufficient to state a claim because Plaintiffs fail to allege that they are excluded from a "range of employment opportunities," or that Hutchinson is precluded from pursuing his chosen career.  See Roth, 408 U.S. at 573-575; Paul, 424 U.S. at 701.

In Buxton v. City of Plant City, Fla, the Eleventh Circuit noted that a liberty interest is implicated under the Due Process Clause if the plaintiff is foreclosed from several employment opportunities because the defendant's defamatory

statements stigmatize plaintiff in the eyes of other employers and the community at large. 871 F.2d 1037, 1046 (11th Cir. 1989); see also Bank of Jackson County, 980 F.2d at 1369 (holding that "[t]he loss of one particular kind of government loan guarantee in a limited geographical area, constituting a limited portion of BJC's business, did not impose so severe a constraint on the bank's freedom that it may be called a deprivation of liberty.") Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 315 (4th Cir. 2012) (affirming the grant of summary judgment on subcontractor's liberty interest claim because subcontractor failed to show that he was "'foreclosed from reentering the field,'" or "'effectively barred from pursuing his chosen trade.'") Kartseva v. Dept. of State, 37 F.3d 1524, 1525 (D.C. Cir. 1994) (holding that a subcontractor failed to allege that the termination of her contract with the prime contractor was a deprivation of liberty because subcontractor was not excluded from a category of government jobs or precluded from pursuing her chosen career).

Plaintiffs, at most, suggest that there is a relationship between the alleged statements made and the claimed consequences. They do not allege that HC and Hutchinson are foreclosed from a range of government contracts or that Hutchinson is foreclosed from pursuing his chosen career. The Court concludes that the Second Amended Complaint fails to allege that the Defendants' allegedly

defamatory statements deprived Plaintiffs of a liberty interest under the Due

Process Clause.  Defendants Titus's and Miller's Motion to Dismiss Plaintiffs' Due

Process claim based on a liberty interest is thus granted.

### 2.  *Procedural Due Process*

To prevail on a procedural Due Process claim, a plaintiff must establish:

(1) a constitutionally protected interest in life, liberty or property; (2) state action

that deprives the constitutionally protected interest in life, liberty or property; and

(3) the constitutional inadequacy of procedures used to deprive the protected

interest in life, liberty or property.  Bank of Jackson County, 980 F.2d at 1366.

"The requirements of procedural due process apply only to the deprivation of

interests encompassed by the [Fifth] Amendment's protection of liberty and

property."  Smith v. Siegelman, 322 F.3d 1290, 1296 (11th Cir. 2003).

The Second Amended Complaint fails to allege a constitutionally protected

interest in liberty or property.  Plaintiffs have, therefore, failed to satisfy the

requisite elements of a procedural Due Process violation.  Without a protectable

interest in liberty or property, Plaintiffs are not entitled to process and there is not a

denial of "due process."  See Manley v. City of Tallahassee, 525 F. App'x 908,

909 (11th Cir. 2013); Tefel v. Reno, 180 F.3d 1286, 1299 (11th Cir. 1999);

Economic Development Corp. of Dade County, Inc. v. Stierheim, 782 F.2d 952,

954 (11th Cir. 1986) (holding that in the absence of a deprivation of an interest in liberty or property, there can be no denial of due process).  Plaintiffs' procedural Due Process claim is thus required to be dismissed.

### 3. Equal Protection

Under the Equal Protection Clause of the Fourteenth Amendment,[7] the federal government, and individuals acting on its behalf, cannot deny a person the equal protection of the laws.  U.S. CONST. amend. XIV.  "The central mandate of the equal protection guarantee is that "[t]he sovereign may not draw distinctions between individuals solely on differences that are irrelevant to a legitimate governmental objective."  Lofton v. Secretary of Dep. of Children and Family Servs., 358 F.3d 804, 817 (11th Cir. 2004).  "To properly plead an equal protection claim, a plaintiff must allege that, through state action, similarly-situated persons are treated disparately."  Austin v. City of Montgomery, 353 F. App'x 188, 191 (11th Cir. 2009) (citing Thigpen v. Bibb County, 223 F.3d 1231, 1237 (11th Cir.

---

[7] "The Equal Protection Clause of the Fourteenth Amendment does not apply directly to the federal government; however, the principles of equal protection are applied to the federal government through the Due Process Clause of the Fifth Amendment."  Swisher Int'l, Inc. v. Schafer, 550 F.3d 1046, 1060 (11th Cir. 2008).

2000), abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536

U.S. 101, 122 S. Ct. 2061 (2002)).

"Proof of discriminatory intent or purpose is a necessary prerequisite to any

Equal Protection Clause claim." Parks v. City of Warner Robins, 43 F.3d 609, 616

(11th Cir. 1995). Intent or purpose means that "the decisionmaker . . . selected or

reaffirmed a particular course of action at least in part 'because of,' not merely 'in

spite of,' its adverse effects upon an identifiable group."

Corey Airport Servs. Inc. v. Clear Channel Outdoor, Inc., 682 F.3d 1293, 1297

(11th Cir. 2012) (internal quotation marks and citations omitted).

Plaintiffs allege that Defendants violated the Equal Protection Clause by

"treat[ing] [Plaintiffs] differently from other similarly-situated contractors in that

Defendants are maliciously prosecuting them due to [Hutchinson's] disabilities."

Second Am. Compl. at ¶ 95. The Second Amended Complaint fails to identify a

similarly-situated contractor that was treated differently. "Bare allegations that

'other' [contractors], even 'all other' [contractors], were treated differently do not

state an equal protection claim; a complaint must attempt to show in some fashion

that these 'other' [contractors] were situated similarly to the plaintiff."

GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1367 (11th Cir. 1998); see

also Douglas Asphalt Co. v. Qore, Inc., 541 F.3d 1269, 1275 (11th Cir. 2008)

(affirming the dismissal of an Equal Protection claim because plaintiff did not "identify an instance in which a similarly situated contractor completed its project without being subject to the same testing procedures.").

The Second Amended Complaint also fails to allege facts that impute a discriminatory intent or purpose on Defendants. Plaintiffs allege that "[s]hortly after beginning work with FOH, [] Hutchinson disclosed his disability to Drs. Scott and Sahakian. They both indicated that he appeared fine and that he must be exaggerating his condition." Second Am. Compl. at ¶ 28. Drs. Sahakian and Scott were supervisors at FOH that left their position at the end of 2012. Id. at ¶¶ 43-49. At some point in 2013, Defendant Titus assumed Dr. Sahakian's role, and Defendant Miller assumed Dr. Scott's role. Id. at ¶ 43-49. The Second Amended Complaint fails to allege that Defendants knew of Hutchinson's disability. It does not contain plausible facts to indicate that Hutchinson's services with FOH and HC's contract with STG were terminated because of Hutchinson's disability or that Defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,'" Hutchinson's disability. See Corey Airport Servs. Inc., 682 F.3d at 1297.

The Court concludes that even after Plaintiffs amended their Complaint, the Second Amended Complaint fails to allege that the services of a similarly-situated

subcontractor were not terminated or that Defendants induced STG to terminate

HC's contract because of Hutchinson's disability.  In fact, they do not allege that

any person involved in the contract termination decision even knew of

Hutchinson's disability.  Defendants' Motion to Dismiss Plaintiffs' Equal

Protection claim is granted.[8]

## III.   CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the

Second Amended Complaint is **GRANTED** [33].

**IT IS FURTHER ORDERED** that the remaining motions pending in this

matter are **DENIED AS MOOT**.[9]

---

[8] The unidentified Doe Defendant is dismissed.  Plaintiffs do not describe the Doe Defendant in their Second Amended Complaint.  "Fictitious party practice is not permitted in federal court."  New v. Sports & Rec. Inc., 114 F.3d 1092, 1094 n.1 (11th Cir. 1997). While courts have sometimes made exceptions when the plaintiff may be able to describe an individual without stating his or her name precisely or correctly, Plaintiffs have not provided any description of the Doe Defendant alleged in this case.  See Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (finding plaintiff's description of "Chief Deputy of the Jefferson County Jail John Doe" sufficient because the proposed defendant existed and plaintiff adequately described the person to be sued so that the person could be identified for service). Thus, this exception does not apply and Defendant Doe is required to be dismissed.

[9] On May 27, 2014, Plaintiffs moved to join STG as a necessary party to this action pursuant to Rule 19(a) of the Federal Rules of Civil Procedure.  Plaintiffs contend that it is necessary to join STG in this action because STG made the decision to

**SO ORDERED** this 25th day of March, 2015.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

terminate the HC Agreement.  On January 12, 2015, Plaintiffs moved for leave to file a Third Amended Complaint.  In the proposed Third Amended Complaint, Plaintiffs seek to add Gene Migliaccio ("Migliaccio"), the Director of FOH, as a Defendant in this action.  Plaintiffs allege that Migliaccio directed that Plaintiffs' services with FOH be terminated.  Plaintiffs' Motions to Join STG as a necessary party and leave to file a Third Amended Complaint are required to be denied as moot because Plaintiffs have failed to allege a constitutional violation, and the addition of these parties is futile.  Even if these parties were added to this action, Plaintiffs' Complaint still fails to state a claim upon which relief can be granted.